**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Baltimore Division

| | |
|---|---|
| **CONNIE L. WILLIAMSON DETHRIDGE** ) | |
| **3517 Rippling Way** ) | |
| **Laurel, MD 20724** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 20-606** |
| ) | **JURY DEMAND** |
| **MARK T. ESPER, Secretary** ) | |
| **United States Department of Defense** ) | |
| **c/o Office of the General Counsel** ) | |
| **1400 Defense Pentagon** ) | |
| **Washington, DC 20301-1400** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## COMPLAINT

Plaintiff Connie L. Williamson Dethridge, by and through her undersigned counsel, brings

this civil action against United States Department of Defense and complains of the Defendant as

follows:

## NATURE OF THE ACTION

1.      Connie L. Williamson Dethridge brings this action against her current employer, the

United States Department of Defense, for violating her rights under Title VII of the Civil Rights Act

of 1964, as amended (42 U.S.C. § 2000e, et seq.) by discriminating against her based on her race and

sex.

2.      Plaintiff is an Investigations Case Analyst with the U.S. Department of Defense -

Defense Counterintelligence and Security Agency.  Because she is an African American woman, she

was denied a detail opportunity by her immediate supervisor, Jeffrey A. Fitzpatrick, a Caucasian

male, to serve as the acting Supervisory Investigations Case Analyst within her unit.  In denying

Plaintiff this detail, Defendant obstructed Plaintiff's ability to compete for supervisory positions within her department, including for the permanent position of Supervisory Investigations Case Analyst, which was awarded to another Caucasian male instead of Plaintiff, through a hiring panel headed by Mr. Fitzpatrick.  Defendant, through Mr. Fitzpatrick, has unlawfully inhibited Plaintiff from rising to a higher position within the DoD due to her sex and race.

## PARTIES

3.      Connie Williamson Dethridge (hereinafter, "Plaintiff" or "Ms. Dethridge") is an African American female resident of Laurel, Maryland.  Ms. Dethridge is currently an Investigations Case Analyst with the U.S. Department of Defense - Defense Counterintelligence and Security Agency.  She is currently a GS-12, Step 4.

4.      Defendant, the U.S. Department of Defense (hereinafter "DoD") - Defense Counterintelligence and Security Agency conducts background checks on current and prospective federal government employees as well as federal contractors, for a variety of purposes including clearing workers for access to classified information. From 2012 until September of 2019, Plaintiff officially worked for the U.S. Office of Personnel Management – National Background Investigations Bureau (hereinafter "OPM").  The Trump Administration ordered the dissolution of OPM and re-assigned its departments to other agencies.  In Plaintiff's case, her team was re-assigned to the DoD, though they continue to work out of the same office space at Fort Meade in Maryland.

## JURISDICTION

5.      This Court has jurisdiction to adjudicate the claims asserted in this Complaint pursuant to 42 U.S.C. § 2000e-5(f)(3) of the Civil Rights Act of 1964.

6.      Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b)(2), because all, or a substantial part, of the events or omissions giving rise to this Complaint occurred in this District.  Additionally, venue is also proper under 42

U.S.C. § 2000e-5(f)(3) of the Civil Rights Act of 1964, because the unlawful employment practices complained of occurred in this district.

## ADMINISTRATIVE EXHAUSTION

7.      Plaintiff has exhausted her administrative remedies. Plaintiff made contact with an EEO Counselor for the Office of Personnel Management on February 14, 2019 to report that she experienced race and sex discrimination from her immediate supervisor, Jeffrey A. Fitzpatrick, a Caucasian male, on February 4, 2019.  On that date, Plaintiff requested EEO counseling for her discrimination claims against Defendant.  The request fell within the 45-day period allotted under 29 C.F.R. § 1614.105.

8.      Plaintiff first filed an informal complaint.  She then received a Final Interview Notice and Notice to File a Formal Complaint from the EEO on March 8, 2019.

9.      Plaintiff filed a formal complaint based on the allegations on March 23, 2019, within the 15-day period provided in 29 C.F.R. § 1614.106.  The Office of Personnel Management acknowledged acceptance of Plaintiff's formal complaint by a letter dated March 25, 2019.

10.     This lawsuit is filed after the passage of 180 days, measured from the time that the Plaintiff filed her formal Complaint, and no final action has been taken or appeal filed, as provided in 29 C.F.R. § 1614.407.

## STATEMENT OF FACTS
### Introduction

11.     Plaintiff is a sixteen-year Coast Guard veteran.  Among the many positions that she held during her time on active duty, Plaintiff served as a Senior Investigations Officer.

12.     When Plaintiff left the military, she wished to continue her career of public service as a civilian and sought a position with OPM which carried with it duties similar to those she performed as a Senior Investigations Officer with the Coast Guard.

13.      Plaintiff joined the OPM in 2012 as a GS-5 Investigative Assistant.  The position carried a promotion potential up to a GS-7.  Throughout her time with OPM/DoD Plaintiff has worked out of offices at Fort Meade in Maryland's Anne Arundel County.

14.      Early in her time with OPM, Plaintiff sensed that she was working in a racially discriminatory environment.  When openings for promotions to Investigations Case Analysts emerged in 2012, Plaintiff and the other Investigative Assistants from her team applied.  Of the four individuals promoted to Investigations Case Analysts from Plaintiff's team, three (3) were Caucasian women and the fourth was a Caucasian male.  Three (3) of the four (4) had been in their positions less than a year.  Plaintiff applied for the initial round and did not receive any of the available positions.  A second round of promotions was done the following year based on the same set of applications.  As will be explained below, Plaintiff was not promoted during this second wave, but this time three (3) of the four (4) individuals promoted were African American women from Plaintiff's team, all of whom had been at the Agency and in their positions longer than the majority of the Caucasians who were promoted first.  Upon information and belief, the candidates were ranked in a racially discriminatory manner by the Caucasian supervisor of the team, Tammy Connor, who had substantial input in the promotion process.

<u>Plaintiff Becomes an Investigations Case Analyst</u>

15.      In November of 2013, Plaintiff was selected by Michelle Doegen, a Supervisory Agent in Charge (SAC), for a position as an Investigations Case Analyst outside of the typical promotions cycle.  Ms. Doegen had an immediate need for an additional Investigations Case Analyst on her team in the International Activity Department and became Plaintiff's first line supervisor.  Ms. Doegan retired in September of 2016 and was succeeded by Julie Gosewich, who also held the title Supervisory Agent in Charge (SAC) and was a GS-13.

16.     In her role as an Investigations Case Analyst in the International Activity Department, Ms. Dethridge performs case work and handles logistics for DoD agents who are conducting portions of federal background investigations abroad.  For example, Plaintiff might arrange travel and handle paperwork for an agent sent to Turkey to conduct a background investigation of a government employee posted in that country.

17.     Throughout Ms. Doegan and Ms. Gosewich's tenure as her first line supervisors, Jeffrey Fitzpatrick, the International Activity Program Manager and a Caucasian male, was Plaintiff's second line supervisor.  In or around February of 2018, Plaintiff's first line supervisor became Jeffrey Fitzpatrick.  Mr. Fitzpatrick was made Plaintiff's first line supervisor following the departure of Ms. Gosewich, earlier that month.

18.     As the International Activity Program Manager, Mr. Fitzpatrick has worked to systematically prevent minorities and women from advancing within OPM/DoD in favor of white men like himself.

19.     For example, Mr. Fitzpatrick has discriminated against Plaintiff based on her race and sex by repeatedly denying or otherwise impeding her promotions and withholding detail opportunities which would allow Plaintiff to gain additional skills and make her advancement more likely.

20.     Upon information and belief, Ms. Gosewich left her role because she found working under Mr. Fitzpatrick to be so discriminatory based on her gender that she applied for and accepted a position at a lower grade (from a GS-13 to a GS-12), working at the help desk in another part, of the Agency, with a lower salary and no supervisory duties.  Ms. Gosewich shared with Plaintiff that she found working for Mr. Fitzpatrick demeaning because of his sexism.  Gosewich explained that Fitzpatrick gave greater weight to the opinions of his male subordinate and mentioned that on one

occasion when she was upset because of Mr. Fitzpatrick's sexist behavior, Fitzpatrick asked her if she was upset because she was menstruating.

<u>Openings Announced Within OPM</u>

21.     On March 14, 2018, DoD announced openings for two Supervisory Investigations Case Analyst (known within DoD as "SICA") positions at The Office of Personnel Management's Fort Meade offices.  These positions were posted under Announcement Number 18-366-PSF-MP and Control Number 493952000.

22.     The SICA is a management position, which includes supervising other employees in the office.  The position holds different duties than the SAC position, where the individual is tasked with managing the agents in the field.  When Ms. Gosewich was still employed within the International Activity Department, she was technically the SAC but also performed the SICA's duties.  It became apparent that Ms. Gosewich was overburdened and that the Department also needed a SICA.  With Ms. Gosewich's departure the Department needed to fill two open positions and the SICA position was announced first.

23.     One of the announced SICA positions was in the area of "Quality" and the other in "International Activity," the department where Plaintiff was already working.

24.     After the announcement of the SICA position for International Activity was made, Mr. Fitzpatrick called a meeting with all of the International Investigations Case Analysts eligible for the position.

25.     Plaintiff was interested in further advancing her career with the Agency and in particular she wished to move into a supervisory position.  Plaintiff applied for both SICA positions (Announcement Number 18-366-PSF-MP; Control Number 493952000).

26.     The Hiring Official for the position in Quality was Patrick Greene.

27.     The Hiring Official for the position in International Activity was Mr. Fitzpatrick.

28.     Plaintiff was deemed certified for both positions in April of 2018.

29.     Other individuals from Plaintiff's department also applied for the SICA position with International Activity.

30.     These individuals were Heather Yeager (Caucasian, female), Sheila Hulsey (Latina, female), and Derrick White (African American, male).  Of the remaining individuals in the International Activity Department only Scott Stafford (Caucasian, male) and Nicole Horwath (Caucasian, female) did not apply.

31.     In addition to Plaintiff, only Mr. White (African-American male) was certified by HR for the International Activity SICA position.

32.     Plaintiff was interviewed but not selected for the SICA position in the Quality department.

33.     She learned during her interview for the Quality position that the SICA position in the International Activity Department was cancelled by Mr. Fitzpatrick.

34.     When Plaintiff went to Mr. Fitzpatrick to inquire how she might have improved her application for the Quality position, Plaintiff and Mr. Fitzpatrick also discussed why he decided to cancel the position in the International Activity Department.

35.     Plaintiff was curious about why the other opening was cancelled because she was looking forward to the opportunity to interview for the position and because she had the best qualifications for the International Activity position, especially because she was already working in that department.

36.     Mr. Fitzpatrick explained that he cancelled the announcement because "he was supposed to review the list of candidates from HR for the cert (certification)" and because he was not given a chance to review the candidates before the announcement closed he "canceled the announcement because certain people did not made the cert from HR."

37.     Upon information and belief, Mr. Fitzpatrick cancelled the cert because his preferred candidate, Scott Stafford, a white male, had not applied and therefore, had not been certified for the position.  Only an African American female (Plaintiff) and an African American male (Mr. White), were left as internal candidates for the position.

38.     What Plaintiff did not know at the time was that this is a violation of agency policy, which dictates that the hiring official should not be involved in the cert process and should only receive the list of individuals *after* the process has concluded.

39.     Mr. Fitzpatrick was willing to break agency policy so as to select a candidate in his preferred demographic.

<u>Temporary Detail as SAC Opens in International Activity Department</u>

40.     With the SICA announcement in International Activity cancelled, Mr. Fitzpatrick needed an interim supervisor for the department, so he petitioned HR for permission to detail an employee for one hundred and twenty (120) days as acting SAC.  Mr. Fitzpatrick chose to request a SAC detail rather than a SICA detail, though as previously stated, both positions needed to be filled.

41.     Mr. Fitzpatrick's request for a detail was approved by HR on or around May 2018. Mr. Fitzpatrick's preferred candidate for the detail was a Caucasian male from outside the department, who refused the detail when it was offered.  Mr. Stafford, the only Caucasian male internal to the department, did not apply for the detail and later expressed to Plaintiff he was not interested in the detail because he did not want to supervise agents.  This left only internal candidates who were minority, female, or both.

42.     Mr. Fitzpatrick did not give the employees an opportunity to apply.  Instead, he selected Heather Yeager, a Caucasian woman in her 30s, for the position.  Because Mr. Fitzpatrick could not assign his ideal white male candidate to the position, he picked what was in his mind the next best thing, a white woman.

43.      Before Ms. Yeager's detail officially ended on July 29, 2018, Mr. Fitzpatrick solicited resumes from the employees in the International Activity Department to take over the detail at the end of Ms. Yeager's term.  Mr. Fitzpatrick explained that he would continue to solicit resumes from within the Department for future selections.  He also stated in conversations with his staff that experience through details would make them more competitive for advancement.

44.      Plaintiff initially indicated she was interested in the detail and submitted her resume to Mr. Fitzpatrick on July 17, 2019.  She met with Mr. Fitzpatrick the following day to discuss the detail.  In their meeting he assured Plaintiff that everyone from the office who was interested would be given the opportunity to serve a rotation on the detail.

45.      On July 19, 2018 Plaintiff withdrew herself from consideration due to short term/temporary family medical obligation.  After learning about the position's hours, Plaintiff felt that she would temporarily not have the availability the position required.   Ms. Dethridge sent Mr. Fitzpatrick an email that day stating "[m]y personal integrity and commitment to our mission will not allow me to [] give less than my best, so I must withdraw my name . . . . While I am withdrawing my name from consideration for the detail scheduled to start on July 29th/30th, I would like to remain in the pool of candidates for future details."

46.      Plaintiff never expressed to Mr. Fitzpatrick or anyone else that she would be uninterested in the position in the future, as her family obligations were only temporary, and her email to Mr. Fitzpatrick explicitly stated that she would like to remain in the pool of candidates.

47.      Mr. Fitzpatrick selected Nicole Horwath, another Caucasian woman, whose detail as the Acting SAC ran until August 2018.  Ms. Horwath was the most junior member on the team and had the least experience.  In particular, unlike Plaintiff, Ms. Horwath had no experience as an investigator, which Plaintiff possessed from her time with the Coast Guard.  The only other

candidate at that time was Sheila Hulsey, a Hispanic woman, who was not in Mr. Fitzpatrick's preferred demographic.

48.     When Ms. Horwath's detail concluded Mr. Fitzpatrick did not generally solicit resumes from the three remaining eligible employees, Scott Stafford, Sheila Hulsey, and Plaintiff.

49.     Instead, Mr. Fitzpatrick simply announced that Mr. Stafford would be the next Acting SAC on October 16, 2018.  Before starting the detail, Mr. Stafford publicly stated more than once that Mr. Fitzpatrick *offered* him the detail on several occasions.  To clarify, this means Fitzpatrick exclusively afforded Mr. Stafford, the only remaining Caucasian team member eligible for the detail, the opportunity to submit a resume that he did not give to Plaintiff and Ms. Hulsey and that Mr. Fitzpatrick intended to select him regardless of whether he submitted a resume.

50.     Mr. Stafford was less experienced than Plaintiff and was the second most junior person on the team next to Ms. Horwath.

51.     Mr. Fitzpatrick's discriminatory animus is further evidenced by the fact that Mr. Stafford neither applied for the detail, nor expressed any interest in the position whatsoever.  Mr. Stafford also expressed to Plaintiff that he was uninterested in the SAC position because he did not want to supervise agents

52.     Plaintiff decided to speak with Mr. Fitzpatrick about his discriminatory behavior.

53.     Plaintiff met with Mr. Fitzpatrick on/around October 18, 2018 to discuss why she was once again not selected to be the Acting SAC.

54.     During the meeting Plaintiff asked Mr. Fitzpatrick what she was doing wrong, since she had clearly indicated that she wanted to serve on the detail and that she wished to be a supervisor, having qualified and interviewed for other supervisory positions, yet he picked Mr. Stafford over Plaintiff, who had shown no interest in the position previously.

55.     Mr. Fitzpatrick candidly told Plaintiff that "I want to give a man a chance, we've had two women" and that he "picked Scott because he was a man."  After uttering this statement, which in itself is discriminatory on its face, Mr. Fitzpatrick told Plaintiff something along the lines of "calm down" and "watch what you say."

56.     Mr. Fitzpatrick proceeded to tell Plaintiff a story about how he had to leave one agency and go to another to get a promotion.  He suggested Plaintiff might consider pursuing a position on another team.  This was designed to make Plaintiff feel unwelcome and encourage her to leave so that he could replace her with his ideal candidate, a white man.

57.     Lastly, Mr. Fitzpatrick advised Plaintiff that between the two vacancies on the team, there would be a detail for at least a year, so everyone, including her, would get a chance to be the acting supervisor.  Plaintiff was discouraged but hoped that she would eventually receive an opportunity to serve on a detail.

58.     Before Mr. Stafford's detail started, the agency released an announcement on October 17, 2018 for the Supervisory Agent in Charge (Announcement Number 19-017-PSF-OPM; Control Number S 14037100).  This announcement would be used to fill multiple vacancies across the country, including the Supervisory Agent in Charge for International Activity.

59.     Consequently, Mr. Stafford could not become the Acting SAC because the position would shortly be filled and would put an automatic and premature end to the detail.  As a result, Mr. Stafford was detailed into an Acting SICA position in International Activity for one hundred and twenty (120) days, making him Plaintiff's acting supervisor.  This SICA position was a detail to the position previously cancelled by Mr. Fitzpatrick, for which Mr. Stafford had not applied.

60.     Mr. Fitzpatrick led the hiring panel for the SAC position and the panel selected yet another Caucasian male, David Brawley, for the permanent position.  Plaintiff applied for this

position and was certified but was not granted an interview despite the fact that Plaintiff was well qualified for the position.

61.     On February 4, 2019, the agency advertised the permanent SICA position in International Activity (Announcement Number 19-078-PSF-OPM; Control Number 5233 73200). Upon information and belief, Mr. Stafford was aware that this position would be posted prior to it being announced because he learned of the position directly from Mr. Fitzpatrick.

62.     The official announcement meant that Mr. Stafford would be the last employee to serve as the Acting SICA, leaving Plaintiff and the other minorities on the team who applied without any supervisory experience, making them less competitive for open supervisory positions.

63.     Plaintiff, Mr. White, Ms. Yeager, and Mr. Stafford all applied for the permanent SICA position and were certified by HR.  Mr. Fitzpatrick served as the hiring official and of those certified, he interviewed only Mr. Stafford for the position.  Mr. Stafford's old supervisor, Kim, was selected by Mr. Fitzpatrick to be on the hiring panel.

64.     All of the other candidates for the position were from outside of the International Activity department and were Caucasian.

65.     Unsurprisingly, Mr. Stafford was selected to be the new SICA in March of 2019. Moreover, a Caucasian male was selected to replace Mr. Stafford in the position he held prior to becoming the Acting SICA.

66.     Plaintiff remains an Investigations Case Analyst.

67.     Plaintiff's experience fits the pattern of a discriminatory preference for Caucasian leadership throughout OPM's (now DOD's) Fort Meade location.  Of the management staff, only 17% of the individuals are minorities.

## COUNT I:
## Gender Discrimination

68.     Plaintiff incorporates the paragraphs above as if specifically set forth herein.

69.     Title VII of the Civil Rights Act of 1964, makes discrimination on the basis of sex

illegal.  *See* 42 U.S.C. 2000e(k); 42 USCS § 2000e-16 (extending the protection to federal employees).

70.     Plaintiff is a female who Defendant, through Mr. Fitzpatrick, denied a detail

opportunity to serve as a Supervisory Investigations Case Analyst and a promotion to a Supervisory

Investigations Case Analyst on the basis of Plaintiff's gender in violation of Title VII of the Civil

Rights Act of 1964, 42 USCS § 2000e-16.

71.     As a result of Defendant's unlawful conduct, Plaintiff suffered economic damages

resulting from the loss of the supervisory pay she would have received on the detail and in the

permanent SICA position.  Furthermore, without supervisory experience from the detail Plaintiff is

less competitive for other supervisory positions within the DoD.  This denial has severely affected

Plaintiff's promotion potential.  Finally, Plaintiff also suffered emotional pain and suffering,

including embarrassment, humiliation, anxiety, stress, a loss of self-esteem and feelings of

powerlessness.

## COUNT II:
## Racial Discrimination

72.     Plaintiff incorporates the paragraphs above as if specifically set forth herein.

73.     Title VII of the Civil Rights Act of 1964, makes discrimination on the basis of race

illegal.  *See* 42 U.S.C. 2000e(k); 42 USCS § 2000e-16 (extending the protection to federal employees).

74.     Plaintiff is an African American who Defendant, through Mr. Fitzpatrick, denied a

detail opportunity to serve as a Supervisory Investigations Case Analyst and a promotion to a

Supervisory Investigations Case Analyst on the basis of Plaintiff's race in violation of Title VII of

the Civil Rights Act of 1964, 42 USCS § 2000e-16.

75.     As a result of Defendant's unlawful conduct, Plaintiff suffered economic damages resulting from the loss of the supervisory pay she would have received on the detail and in the permanent SICA position.  Furthermore, without supervisory experience from the detail, Plaintiff is less competitive for other supervisory positions within the DoD.  This denial has severely affected Plaintiff's promotion potential.  Finally, Plaintiff also suffered emotional pain and suffering, including embarrassment, humiliation, anxiety, stress, a loss of self-esteem and feelings of powerlessness.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Dethridge respectfully prays that this Court enter judgment against Defendant as follows:

a)   enter a declaratory judgement finding that the Defendant violated federal law as specified herein;

b)   enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c)   award monetary and compensatory damages pursuant to Title VII in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, humiliation, embarrassment, and mental and emotional distress caused by the conduct of Defendant as alleged herein;

d)   award Plaintiff reasonable attorneys' fees and costs incurred in this action;

e)   order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Respectfully submitted,

_____/s/ Sundeep Hora_____
Sundeep Hora (M.D. Bar. No. 28208)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW
Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@adhlawfirm.com

*Attorney for Plaintiff*