IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONNIE L. WILLIAMSON       *
DETHRIDGE,

                            *

     Plaintiff,

                            *

v.                                       Civil Action No. GLR-20-606

                            *

MARK T. ESPER, SECRETARY,
U.S. DEPARTMENT OF DEFENSE,[1]     *

     Defendant.                 *

                          ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's Motion to Substitute and Dismiss or in the Alternative for Summary Judgment (ECF No. 10). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant in part and deny in part the Motion, which it construes as a motion to dismiss.

---

[1] The government contends that the Office of Personnel Management ("OPM"), not the Department of Defense ("DoD"), is the proper defendant in this case. Thus, the government seeks to dismiss Secretary Mark T. Esper, who is named in his representative capacity as head of DoD, and replace him with the Acting Director of OPM. Dethridge does not oppose this substitution. (See Pl.'s Partial Opp'n Def.'s Mot. Substitute Dismiss Alt. Summ. J. ["Opp'n"] at 1–2, ECF No. 13).

Kathleen McGettigan currently serves as the Acting Director of OPM. See OPM, Office of the Director, https://www.opm.gov/about-us/our-people-organization/office-of-the-director/bios/kathleen-mcgettigan/ (last visited Apr. 25, 2021). Accordingly, the Court will direct the Clerk to amend the docket by replacing Mark T. Esper with "Kathleen McGettigan, Acting Director, U.S. Office of Personnel Management." Additionally, the Court will refer to Defendant in this case as "OPM" or the "Agency."

# I.     BACKGROUND[2]

Plaintiff Connie Williamson Dethridge is an African American woman who is currently employed as an Investigations Case Analyst with the United States Department of Defense ("DoD"). (Compl. ¶ 3, ECF No. 1). Dethridge was previously employed by the United States Office of Personnel Management ("OPM" or the "Agency") until 2019, when the Trump administration ordered the dissolution of OPM and Dethridge's team was reassigned to DoD. (Id. ¶ 4). Dethridge joined OPM in 2012 as a GS-5 Investigative Assistant and became an Investigations Case Analyst in November 2013. (Id. ¶¶ 13, 15). As an Investigations Case Analyst in the International Activity department, Dethridge performs case work and handles logistics for DoD agents who are conducting portions of federal background investigations abroad. (Id. ¶¶ 15–16).

On March 14, 2018, OPM announced openings for two Supervisory Investigations Case Analyst ("SICA") positions—one in the International Activity department, where Dethridge worked, and the other in the Quality department. (Id. ¶¶ 21, 23). At that time, the Supervisory Agent in Charge ("SAC") position was also vacant, but OPM had not yet announced a formal job opening. (Id. ¶¶ 22, 40). Dethridge applied for both SICA positions and was deemed certified in April 2018. (Id. ¶¶ 25, 28). Dethridge was interviewed but not selected for the SICA position in the Quality department. (Id. ¶ 32). During her interview,

---

[2] Unless otherwise noted, the Court takes the following facts from Dethridge's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

Dethridge learned that Jeffrey Fitzpatrick, the International Activity Program Manager, had cancelled the SICA position in the International Activity department. (Id. ¶¶ 17, 33).

After cancelling the vacancy for the International Activity SICA position, Fitzpatrick was in need of an interim supervisor for the department. (Id. ¶ 40). As such, Fitzpatrick requested permission to detail an employee as Acting SAC for 120 days. (Id.). Dethridge notes that although Fitzpatrick requested a SAC detail rather than a SICA detail, both positions needed to be filled. (Id.). Fitzpatrick's request for a detail was approved around May 2018. (Id. ¶ 41). Fitzpatrick did not give internal employees an opportunity to apply for the Acting SAC position, and instead selected Heather Yeager, a white woman, for the detail. (Id. ¶ 42). Near the end of Yeager's 120-day detail, Fitzpatrick solicited resumes from his staff to fill the position. (Id. ¶ 43). Due to family obligations, Dethridge was unable to apply for the Acting SAC detail at this time. (Id. ¶ 45). Fitzpatrick ultimately selected Nicole Horwarth, a white woman, for the position. (Id. ¶ 47). At the conclusion of Horwarth's detail, Fitzpatrick did not solicit resumes from Scott Stafford, Sheila Hulsey, or Dethridge, who were the three remaining eligible employees in his department. (Id. ¶¶ 43, 48). Instead, on October 16, 2018, Fitzpatrick announced that Stafford, who is a white man, would become the next Acting SAC. (Id. ¶ 49).

On October 17, 2018, however, OPM released a vacancy announcement for the permanent SAC position. (Id. ¶ 58). According to Dethridge, this announcement meant that Stafford would not be able to serve as the Acting SAC because filling the permanent SAC position would prematurely terminate the Acting SAC role. (Id. ¶ 59). Dethridge contends

that, as a result, Stafford was reassigned to the Acting International Activity SICA position for a 120-day detail. (Id.).

On February 4, 2019, OPM announced the vacancy for the Permanent SICA position. (Id. ¶ 61). According to Dethridge, Fitzpatrick then cancelled the SICA detail, which meant that Stafford would be the last person to serve in the Acting SICA role and Dethridge would not get the chance to gain supervisory experience through the Acting SICA role. (Id. ¶ 62). The cancellation of the SICA detail contradicted Fitzpatrick's assurance that the Acting SICA position would be open for at least a year and Dethridge would get a chance to serve as acting supervisor. (Id. ¶ 57).

Following the cancellation of the Acting SICA detail, Dethridge, White, Yeager, and Stafford all applied for the Permanent SICA position and were certified by the human resources department. (Id. ¶ 63). Fitzpatrick only interviewed Stafford for the position, and Stafford was ultimately selected to be the new SICA in March 2019. (Id. ¶ 65).

**B.    Procedural History**

Dethridge made contact with an Equal Employment Opportunity ("EEO") counselor at OPM on February 14, 2019 to report race and sex discrimination by Fitzpatrick. (Compl. ¶ 7). After filing an informal complaint, Dethridge received a final interview notice and a notice to file a formal complaint on March 8, 2019. (Id. ¶ 8). Dethridge filed a formal EEO complaint on March 23, 2019, which was acknowledged by OPM in a letter dated March 25, 2019. (Id. ¶ 9).

Dethridge filed suit in this Court on March 5, 2020. (ECF No. 1). The two-count Complaint alleges gender discrimination in violation of Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. § 2000(e) <u>et seq.</u> (Count I), and racial discrimination in violation of Title VII (Count II). (Compl. ¶¶ 68–75). Dethridge seeks declaratory, injunctive, and monetary relief. (<u>Id.</u> at 14).

OPM filed the present Motion on September 2, 2020. (ECF No. 10). Dethridge filed an Opposition on October 16, 2020. (ECF No. 13). On November 24, 2020, OPM filed a Reply. (ECF No. 18). With OPM's consent, Dethridge submitted a Surreply on January 6, 2021. (ECF No. 21).

## II.    STANDARD OF REVIEW

### A.    <u>Conversion</u>

OPM's Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See <u>Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional

evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

Dethridge argues that it would be premature to construe the Agency's Motion as one for summary judgment because she has not had a reasonable opportunity for discovery. In addition, counsel for Dethridge has submitted an affidavit, in accordance with Rule 56(d), setting forth several detailed categories of discovery that could establish a genuine issue of material fact in this dispute. (See generally Rule 56(d) Aff. of Sundeep Hora, Esq. ["Rule 56(d) Aff."], ECF No. 21-1). The Court is satisfied that the evidence sought by Dethridge could establish a genuine dispute of material fact sufficient to defeat summary judgment. Accordingly, the Court will construe the government's Motion as a motion to dismiss.

Although the Court will construe the Agency's Motion as a motion to dismiss, the Court "may consider . . . documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." Sposato v. First Mariner Bank, No. CCB-12-1569, 2013 WL 1308582, at *2 (D.Md. Mar. 28, 2013); see CACI Int'l v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). Here, OPM includes several extra-pleading documents for the Court's review, including Dethridge's EEO complaint and EEO's partial acceptance letter of Dethridge's claim. (See ECF Nos. 10-1, 10-2). Dethridge concedes that these materials are both authentic and integral to her Complaint. (Pl.'s Partial Opp'n Def.'s Mot. Substitute Dismiss Alt. Summ.

J. ["Opp'n"] at 12 n.3, ECF No. 13). Additionally, Dethridge submits an affidavit that was prepared during the EEO's investigation. (See ECF No. 13-2). Courts in this district have routinely determined that EEO documents like the ones attached to the parties' briefs are integral documents in employment discrimination actions. See, e.g., Britt v. Brennan, No. RDB-19-0401, 2020 WL 1701711, at *2 (D.Md. Apr. 8, 2020); Battle v. Burwell, No. PWG-14-2250, 2016 WL 4993294, at *9 n.8 (D.Md. Sept. 19, 2016). For these reasons, the Court will consider the EEO documents without converting the Agency's motion to one for summary judgment.

**B.**   **Rule 12(b)(6)**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must

8

allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

## C.    Title VII

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). In other words, Title VII prohibits an employer from taking an "adverse employment action" against an employee on a prohibited basis. James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). This equates to two essential elements of a discrimination claim under Title VII: (1) the plaintiff suffered an adverse employment action (2) because of the plaintiff's protected characteristic. See Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

In general, there are two avenues at trial by which a plaintiff may prove that an adverse employment action amounts to intentional employment discrimination. Hill v.

Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc), cert. denied, 543 U.S. 1132 (2005). The first avenue is to provide direct or circumstantial evidence of discrimination at trial that is sufficiently probative to meet the burden of proof. See Evans, 80 F.3d at 961. The second avenue available to the plaintiff is the burden-shifting approach first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, the plaintiff must first establish a "prima facie case of discrimination." Laing v. Fed. Exp. Corp., 703 F.3d 713, 719 (4th Cir. 2013) (citation omitted). "[T]he elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citation omitted), aff'd sub nom. Coleman v. Ct. of Appeals of Md., 566 U.S. 30 (2012). Although the precise formulation of the required prima facie showing will vary in "differing factual situations," McDonnell Douglas, 411 U.S. at 802 n.13, the plaintiff in an employment discrimination suit is generally required to show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Importantly, an employment discrimination plaintiff is not required "to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 585 (2002)). Rather, "the

complaint must 'state[] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" Coleman, 626 F.3d at 190 (quoting Iqbal, 556 U.S. at 679). Nonetheless, the elements of a prima facie case "serve to inform a court's evaluation of the allegations" at the motion to dismiss stage. Wright v. Kent Cnty. Dep't of Soc. Servs., No. ELH-12-3593, 2014 WL 301026, at *13 (D.Md. Jan. 24, 2014).

### III.   DISCUSSION

Dethridge alleges that two adverse actions were taken against her on account of her sex and race: first, the cancellation of the Acting SICA detail in February 2019; and second, the denial of a promotion to the Permanent SICA position in March 2019. The Court evaluates these allegations in turn.

### A.   Cancellation of Acting SICA Detail

OPM asserts that Dethridge's claim regarding discontinuation of the Acting SICA detail must be dismissed because she has failed to set forth a prima facie claim for employment discrimination. As noted above, although a plaintiff in an employment discrimination case is not required to establish a prima facie case of discrimination under the McDonnell Douglas framework, the Court may refer to the elements of a prima facie case to evaluate whether the complaint states a plausible claim for relief. See Wright, 2014 WL 301026, at *13. For the reasons outlined below, the Court finds that Dethridge has satisfied this burden.

### 1.      Adverse Employment Action

OPM first contends that Dethridge's claim regarding cancellation of the Acting SICA detail must fail because discontinuing a temporary position does not constitute an adverse employment action. "As a general matter, failure to appoint an individual to a temporary position is usually not sufficient to constitute an adverse action." Kangethe v. Dist. of Columbia, 206 F.Supp.3d 661, 670 (D.D.C. 2016) (citing Stewart v. Evans, 275 F.3d 1126, 1135 (D.C. Cir. 2002)). However, "[n]on-selection for a temporary position can constitute an adverse action if the position would have provided some tangible and objective benefit." Id. (citing White v. Vilsack, 888 F.Supp.2d 93, 98 (D.D.C. 2012) (holding that plaintiff alleged an adverse action based on denial of a temporary position because the position "could possibly have affected Plaintiff's potential pay")). By contrast, "generalized and speculative assertions of benefits that may accrue from a temporary post are insufficient." Id. (citation omitted). Although a temporary detail may come with greater responsibilities and make an employee more competitive for promotion, courts generally find that such benefits are "too intangible and speculative" on their own to give rise to an adverse employment action. See id. (finding denial of temporary position was not an adverse employment action where plaintiff failed to "indicate any concrete benefit he missed out on, such as increased pay or benefits"); see also Maramark v. Spellings, No. 06-5099, 2007 WL 2935411, at *1 (D.C. Cir. Sept. 20, 2007) ("[T]he denial of a five-month detail that might have allowed [plaintiff] to secure a permanent position at DOE, is too speculative to constitute an 'objectively tangible harm.'") (citation omitted)).

Here, Dethridge alleges that OPM's cancellation of the Acting SICA position deprived her of the ability to hold a supervisory role, thereby making her "less competitive for open supervisory positions." (Compl. ¶ 62). As the case law makes clear, the cancellation of a temporary position that might have made Dethridge more competitive for a supervisory role, without more, does not constitute an adverse employment action. <u>See</u> <u>Maramark</u>, 2007 WL 2935411, at *1. Dethridge does, however, briefly state that cancellation of the detail resulted in "loss of the supervisory pay she would have received on the detail." (Compl. ¶¶ 71, 75). Though modest, this allegation is sufficient to convey that the benefits of the Acting SICA role were concrete, not merely "intangible and speculative." <u>See</u> <u>Kangethe</u>, 206 F.Supp.3d at 670. Accordingly, the Court declines to dismiss on these grounds.

### 2. Disparate Treatment

OPM also argues that Dethridge cannot set forth a prima facie discrimination case because she cannot show that she was treated differently than similarly situated employees outside the protected class. To establish the fourth element of a prima facie discrimination claim, an employee must typically demonstrate that the "position remained open or was filled by a similarly qualified applicant outside the protected class." <u>Murray v. UFCW, Local 400</u>, 100 F.App'x 165, 172 (4th Cir. 2004) (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000)). As such, some courts have held that "[w]hen a government agency cancels a vacancy announcement and no one outside the protected class is hired to fill the position, the plaintiff cannot establish her prima facie case." <u>Bowie v. Ashcroft</u>, 283 F.Supp.2d 25, 31 (D.D.C. 2003); <u>see also</u> <u>Fornah v. Univ. of Md.</u>, 2009

WL 3247423, at *5 (D.Md. Sept. 30, 2009) ("Plaintiff cannot make a prima facie case for discrimination because Defendant cancelled the search for Vacancy No. 1189.").

In other circumstances, however, courts have found that a "'plaintiff may satisfy the fourth element of the prima facie case through evidence that the employer did, in fact, have an available vacant position, notwithstanding the cancellation of a vacancy announcement.'" Saunders v. Mills, 172 F.Supp.3d 74, 90 (D.D.C. 2016) (quoting Lewis v. Dist. of Columbia, 653 F.Supp.2d 64, 74 (D.D.C. 2009)). In such cases, the proper question is not whether the vacancy announcement was cancelled but why the vacancy was cancelled. See Mulrain v. Donovan, 900 F.Supp.2d 62, 67 (D.D.C. 2012) (holding "the mere fact of cancelling a Vacancy Announcement does not give rise to an inference of discrimination; it is [t]he motivation behind the vacancy cancellation [that] determines whether the [employer's] action violates Title VII") (internal citations and quotation marks omitted).

Although Dethridge has not specifically alleged that someone outside the protected class was hired for the Acting SICA position or that the position remained open, the Court nonetheless finds that the facts in the Complaint give rise to an inference that the Acting SICA position was cancelled for a discriminatory reason. When the detail was first announced, Fitzpatrick "stated in conversations with his staff that experience through details would make them more competitive for advancement" and "assured [Dethridge] that everyone from the office who was interested would be given the opportunity to serve a rotation on the detail." (Compl. ¶¶ 43–44). After two white women had served in the position, Fitzpatrick announced that Stafford, a white man, would be next to serve in the

14

detail without giving Dethridge the chance to submit her resume. (Id. ¶ 49). Fitzpatrick selected Stafford for the detail even though Stafford had not "expressed any interest in the position whatsoever," he "was less experienced than [Dethridge]," and "was the second most junior person on the team." (Id. ¶¶ 50–51). When Dethridge asked for an explanation for his decision, Fitzpatrick told her he "want[ed] to give a man a chance" and "picked [Stafford] because he was a man." (Id. ¶ 55). Fitzpatrick once again assured her "there would be a detail for at least a year, so everyone, including [Dethridge], would get a chance to be the acting supervisor." (Id. ¶ 57). Despite this assurance, Fitzpatrick cancelled the Acting SICA position during Stafford's term, which meant that "Stafford would be the last employee to serve as the Acting SICA, leaving [Dethridge] and the other minorities on the team who applied without any supervisory experience." (Id. ¶ 62). Dethridge explains that Fitzpatrick discriminated against her by "withholding [a] detail opportunit[y] which would allow [Dethridge] to gain additional skills and make her advancement more likely." (Id. ¶ 19). Indeed, Stafford was ultimately hired for the Permanent SICA role. (Id. ¶ 65).

Taken together, these allegations give rise to an inference that Fitzpatrick cancelled the Acting SICA detail before Dethridge could serve in the position on the basis of Dethridge's race and sex. At this stage, this is sufficient to state an employment discrimination claim. See Baloch, 550 F.3d at 1196 ("[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race . . . [or] sex . . . ."). Once again, the Court declines to dismiss on these grounds.

### 3.      Pretext

Finally, OPM argues that Dethridge's claim regarding cancellation of the Acting SICA is subject to dismissal because she will not be able to establish that the Agency's stated reason for withdrawing the detail was pretextual. This argument misses the mark. Demonstrating pretext is part of the <u>McDonnell Douglas</u> burden-shifting framework, and it is well established that "a complaint in an employment discrimination lawsuit [need not] contain specific facts establishing a prima facie case of discrimination under the framework set forth in <u>McDonnell Douglas</u>." <u>See</u> <u>Swierkiewicz</u>, 534 U.S. at 508. At this stage, Dethridge must only plausibly allege that OPM took adverse action against her "under circumstances which give rise to an inference of unlawful discrimination." <u>Scott v. Lori</u>, No. ELH-19-2014, 2020 WL 3833129, at *10 (D.Md. July 8, 2020) (quoting <u>Burdine</u>, 450 U.S. at 253). The Court finds that she has done so here. Accordingly, Dethridge's claim regarding cancellation of the Acting SICA detail survives OPM's motion to dismiss.

### B.      <u>Non-Selection for Permanent SICA Position</u>

OPM next argues that Dethridge failed to exhaust her administrative remedies as to her non-selection claim for the Permanent SICA position because she failed to adequately raise this claim in her EEO complaint.[3] The Court agrees.

---

[3] OPM also argues that this claim must fail because Dethridge has not set forth the elements of a prima facie discrimination case. As noted above, an employment discrimination plaintiff is not required "to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." <u>See</u> <u>McCleary-Evans</u>, 780 F.3d at 585. Moreover, because this claim will be dismissed for failure to exhaust administrative remedies, the Court declines to consider whether Dethridge has pleaded a prima facie case.

Prior to instituting a judicial action alleging employment discrimination under Title VII, a federal employee is required to exhaust all available administrative remedies. 42 U.S.C. § 2000e-16(c); Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976). First, the employee must file a timely charge of discrimination with the agency's EEO office. 29 C.F.R. § 1614.105(a)(1). Importantly, a plaintiff only exhausts her administrative remedies as to the "'discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint.'" Thiessen v. Stewart-Haas Racing, LLC, 311 F.Supp.3d 739, 743 (M.D.N.C. 2018) (quoting Evans, 80 F.3d at 963).

Although it is well established "that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge," the Fourth Circuit recognizes that "lawyers do not typically complete the administrative charges, and so courts construe them liberally." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted). In all instances, however, a charging document must put an employer on notice of the complainant's allegations by containing "enough material that the Defendant would have been able to comprehend the accusation, investigate on its own, and either root out the problem or come to the conciliation table with eyes wide open." EEOC v. Phase 2 Invs. Inc., 310 F.Supp.3d 550, 568 (D.Md. 2018).

In her EEO charge, Dethridge alleges that OPM discriminated against her on February 4, 2019 when it "withdrew the [Acting SICA] Detail opportunity and announced the position under job announcement number 19-078-PSF-OPM; preventing [her] from the opportunity to serve and gain experience as an Acting Supervisor in the civilian

workforce." (EEO Compl. at 2, ECF No. 10-2).[4] In the factual write-up of her claims, Dethridge further explains that the "announcement solidifies that all the Caucasian members of our team who are eligible for this position will be able to include the work experience from serving as the acting supervisor." (Id. at 7). The EEO agreed to investigate Dethridge's claim regarding this incident, defining the issue as: "[w]hether [Dethridge] was discriminated against based on her race (African-American) and sex (female) when on February 4, 2019, her supervisor withdrew the Supervisory Case Analyst detail opportunity and the Agency announced it under Vacancy Announcement Number 19-078-PSF-OPM, preventing Complainant from the opportunity to gain Acting Supervisory experience[.]" (EEO Partial Acceptance Ltr. at 1, ECF No. 10-3 (emphasis added)).

At the outset, Dethridge argues that her EEO complaint adequately raised her non-selection claim because it references the announcement for the Permanent SICA position. The Court is not persuaded. While it is true that the EEO complaint mentions the announcement of the Permanent SICA role, announcing a vacancy for a permanent position is not the same as failing to select an individual for that position. Additionally, the EEO charge contains no allegations regarding Dethridge's non-selection for the Permanent SICA role, nor does it explain why she believes the hiring process for that position was discriminatory. The Court thus finds that the plain language of Dethridge's EEO charge

---

[4] Dethridge's EEO complaint also alleged that OPM discriminated against her on October 18, 2018, "when Jeffrey Fitzpatrick informed [her] that he selected Scott Stafford as the next [Acting SICA] because he was male." (EEO Compl. at 2). OPM's EEO office dismissed this claim as untimely because Dethridge failed to make contact with an EEO counselor within forty-five days of the event. (EEO Partial Acceptance Ltr. at 2, ECF No. 10-3).

was limited to OPM's elimination of the SICA detail and announcement of the Permanent SICA position—not the Agency's failure to select her for the permanent role.

Dethridge next argues that she exhausted her non-selection claim for the Permanent SICA position because it is reasonably related to the allegations in her EEO complaint. It is true that Dethridge's non-selection claim involves roughly the same time period, actor, and discriminatory conduct as the adverse event alleged in her EEO complaint—hiring for the Permanent SICA role occurred a short time after cancellation of the Acting SICA detail, and both events were premised on alleged race and sex discrimination by Fitzpatrick. On the other hand, Dethridge cannot escape the fact that her non-selection claim relates to an adverse employment action that is entirely distinct from the event set forth in her EEO complaint. Dethridge's EEO charge, with its narrow focus on the cancellation of the Acting SICA detail and announcement of the Permanent SICA position, in no way suggested that Fitzpatrick also discriminated against Dethridge by failing to hire her for the Permanent SICA role. As a result, Dethridge's EEO charge did not give the Agency sufficient notice so that it could investigate her non-selection claim. See Phase 2, 310 F.Supp.3d at 568 (noting that an EEO charge must contain "enough material that the Defendant would have been able to comprehend the accusation [and] investigate on its own"). Indeed, the scope of OPM's investigation was limited to questions about the Acting SICA position; the only mention of the Permanent SICA role is OPM's inquiry about the "Selecting Official for the detail position and permanent vacancy." (See Dethridge Aff. at 3, ECF No. 13-2). Because the Court finds that Dethridge's non-selection claim was not reasonably related to the claim

19

stated in her EEO complaint, Dethridge has not exhausted administrative remedies for her non-selection claim. Accordingly, this claim must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, OPM's Motion to Substitute and Dismiss or in the Alternative for Summary Judgment (ECF No. 10), construed as a motion to dismiss, will be granted in part and denied in part. A separate Order follows.

Entered this 4th day of May, 2021.

_____/s/_____
George L. Russell, III
United States District Judge